UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

OLIVET UNIVERSITY,

                Plaintiff,

    -against-

NANCY COOPER, JENNIFER CUNNINGHAM, NAVEED JAMALI, and DEV PRAGAD,

             Defendants.

-------------------------------------------------- X

**COMPLAINT**
**WITH JURY DEMAND**

**CASE NO. 1:25-cv-10537**

Olivet University ("Olivet"), by its undersigned counsel, brings this Complaint against Nancy Cooper, Jennifer Cunningham, Naveed Jamali, and Dev Pragad for committing defamation against Olivet.

## NATURE OF THE ACTION

1. Olivet University is a private, evangelical Christian university dedicated to training ministry-bound men and women to evangelize and preach the gospel of Jesus Christ to the network generation. Olivet's vision is born of God's enduring hope for a world that is "full of the knowledge of the Lord as the waters cover the sea."[1] The fulfillment of this Biblical vision inspires, orients, and defines the work of this institution. Olivet's main campus is located in Southern California. It also has extension campuses across the United States, including in Florida, Missouri, Tennessee, and Washington, D.C.

---

[1] *Isaiah* 11:9 (English Standard Version)

2. Newsweek Publisher Dev Pragad is the initiator, orchestrator, and publisher—and Alex Rouhandeh, Nancy Cooper, Jennifer Cunningham, Dayan Candappa, and Naveed Jamali are the writers, editors, and co-publishers—of 23 Newsweek articles systematically attacking Olivet. This barrage began shortly after Pragad vowed in text messages to attack Olivet with a "nuclear bomb."

3. Pragad, Rouhandeh, Cooper, Candappa, and Jamali conspired to attack Olivet by joining together as a covert inner circle inside of Newsweek. Their positions were as follows: Newsweek Publisher, Dev Pragad; Chief Content and Strategy Officer Dayan Candappa; Global Editor in Chief Emeritus and Advisor Nancy Cooper; Contributing Editor-at-Large Naveed Jamali; and Congressional Correspondent Alex Rouhandeh. Jennifer Cunningham entered the circle in or around December, 2024 when she joined Newsweek as the Editor-in-Chief and assumed the helm of Pragad's attack campaign.

4. Pragad, Rouhandeh, Cooper, Cunningham, Candappa, and Jamali have altogether authored, edited, and published 23 articles since the Newsweek Publisher's threat of attacking Olivet with a "nuclear bomb."

5. The systematic attack campaign pushed by Pragad, Rouhandeh, Cooper, Cunningham, Candappa, and Jamali began in 2022 and continued unabated for more than three years—the most recent article attacking Olivet was published on October 2, 2025.

2

6. Rouhandeh was a general assignment reporter for Newsweek at the time he began covering Olivet.  He penned several attack pieces against Olivet and was then promoted to the position of Congressional Correspondent.  This promotion came after Pragad specifically sent text messages to Olivet members threatening to "nuke everyone" by "[triggering] a congressional investigation [into] Olivet."[2]  Since then, at least two congresspeople have given quotes to Newsweek, which Newsweek construed negatively against Olivet (despite the congresspeople characterizing these as neutral statements) in articles authored by Rouhandeh.

7. Rouhandeh co-authored many of his attack pieces with Newsweek editor Naveed Jamali.  While Rouhandeh was promoted after authoring hit pieces against Olivet, his co-author, Jamali, conversely stated on social media that he feared he would lose his job if he did not attack Olivet.  Although Jamali since deleted this post because of its obvious negative implications about his unethical motivation to attack Olivet, the university downloaded and saved the video recording of Jamali's public confession prior to its deletion.  Jamali reports to Newsweek's Global Editor Emeritus and Advisor Nancy Cooper and current Editor-in-Chief Jennifer Cunningham, who in turn reports to Chief Content and Strategy Officer Dayan Candappa, who sits on the

---

[2] https://www.techtimes.com/articles/277527/20220703/newsweek-ceo-dev-pragad-faces-lawsuit-for-fraud-and-betrayal.htm.

executive team of Newsweek along with Newsweek Publisher, Pragad. Pragad personally solicited ex-Olivet students on social media for information related to their experiences at Olivet to help further the covert inner circle's objectives, despite editor Cooper's claim that the Newsweek newsroom is "independent" from influences outside the newsroom. Pragad then in turn directed the newsroom to write Olivet stories after obtaining the information from ex-students and members. Olivet has obtained copies of Pragad's personal communications in which he attempted to solicit information from former students that he could use to attack Olivet.

8. Pragad is a former Olivet member. In or around April 2022, Pragad publicly announced his disassociation from Olivet. At the time, Olivet members privately held ownership interests in Newsweek, where Pragad sat as CEO. Pragad was dissatisfied with Olivet after it refused to pressure its members to hand Newsweek ownership over to Pragad for free. As Publisher, Pragad threatened via text messages to "go to [the] media about Olivet" to attack it with claims of "human trafficking" if Olivet did not reach a "special arrangement" by forcing its members to give Pragad full control of Newsweek. These text messages were sent only days before Rouhandeh, Cooper, Candappa, Jamali, and others began Newsweek's systematic attack against Olivet, publishing now 23 articles. Meanwhile, Cooper, Candappa,

and Cunninghamn ran a smokescreen campaign to ethics-wash Newsweek's illegal motives.[3]

9. Rouhandeh, Cooper, Cunninghamn, Candappa, and Jamali have followed through on Pragad's various threats, authoring for publication numerous false and defamatory statements about Olivet. Newsweek published article (the "Defamatory Articles") orchestrated, written, edited, and published by Pragad, Rouhandeh, Cooper, Cunningham, Candappa, and Jamali, falsely associating Olivet with serious criminal activity such as "money laundering, visa fraud and labor trafficking."

---

[3] Rouhandeh previously repudiated having any knowledge of Pragad's text messages. This is curious, especially given the public justification Rouhandeh's editor, Cooper, gave for Newsweek's ongoing Olivet coverage. In a public, July, 2022 letter titled, "Covering Newsweek's Owners," Newsweek Global Editor in Chief Nancy Cooper wrote, "'[w]e've been accused of being a partisan actor in [a Newsweek] shareholder dispute because we've committed resources to covering a little-known Christian sect [i.e., Olivet] whose latest troubles have drawn scant attention from other media outlets. If these controversies had no connection to Newsweek's owners, we'd likely not cover them either. But it's crucial for us to report on our proprietors…. [W]e have rigorously covered developments related to our owners, and we will continue to do so. *This is a standard ethical practice in U.S. newsrooms. To ignore the story would be* passive if not *complicit.*" Nancy Cooper, *Covering Olivet's Owners*, Newsweek (July 5, 2022), https://www.newsweek.com/covering-newsweeks-owners. At best, the failure of Cooper and Candappa to investigate the authenticity of their Publisher's text messages represents a brazen and reckless disregard of their ethical and professional duties as editors and journalists to investigate their subject matter. At worst, it is a defamation by omission, a damning demonstration of their willful and intentional turning of a blind eye toward the Newsweek Publisher's wrongdoing. Notably, it is Pragad that claims, dubiously, to be the owner of Newsweek—a claim deserving heightened scrutiny in Newsweek's coverage, according to editor Cooper. Yet ironically, Rouhandeh and Cooper for years ignored the easily verifiable text messages of "owner" Pragad in the name of bashing Pragad's enemy, Olivet—while justifying their attack on Olivet under the smokescreen of Cooper's letter.

10. Newsweek's senior editorial leadership, led by the magazine's Publisher, Dev Pragad, have continuously attacked Olivet and its counsel because Olivet members have served as whistleblowers to Pragad's alleged fraudulent behavior, including business fraud, tax evasion, ad fraud, lying about conversations with government officials, and immigration fraud.[4]

11. Pragad, Rouhandeh, Cooper, Cunningham, Candappa, and Jamali knew that this and numerous other statements in the Defamatory Articles they orchestrated, wrote, edited, and published were false. The deliberate false and misleading reporting by Pragad, Rouhandeh, Cooper, Cunningham, Candappa, and Jamali about Olivet University had its intended effect, causing serious and ongoing damage to Olivet's reputation. Olivet brings this lawsuit to seek redress for its injuries and to stop Pragad, Cooper, Cunningham, and Jamali from further damaging its reputation. Since Newsweek's attack network consists of a remote, distributed team that has argued personal jurisdiction as a reason for dismissal in other jurisdictions, Olivet brings this

---

[4] *See* Ryan Lee, *Covert Team Inside Newsweek Revealed as Key Players in False Human Trafficking Lawsuit*, HEADLINES & GLOBAL NEWS (Feb. 3, 2024), https://www.hngn.com/articles/256545/20240203/covert-team-inside-newsweek-revealed-key-players-false-human-trafficking.htm; Leonardo Blair, *Feds decline all charges, ends probe into Olivet University*, THE CHRISTIAN POST (Sept. 30, 2025), https://www.christianpost.com/news/feds-end-trafficking-probe-into-olivet-university.html; Ryan Lee, *Dev Pragad Accused of Stealing Newsweek in Bombshell Lawsuit*, INTERNATIONAL BUSINESS TIMES (Aug. 11, 2025), https://www.ibtimes.com/dev-pragad-accused-stealing-newsweek-bombshell-lawsuit-3780687.

action against Pragad, Cooper, Cunningham, and Jamali in their home New York district, which has general jurisdiction over each and every one of them. Other members of Newsweek's covert attack force are being sued in their own home districts.

## PARTIES

12. Plaintiff Olivet is a religious nonprofit corporation organized and existing under the laws of the State of California with its principal place of business in Anza, California.  Olivet Theological College & Seminary was founded in 2000 by evangelical, Korean American pastor Dr. David Jang.  The seminary expanded into a full university in 2004, and thus Olivet University was born.

13. Defendant Pragad, an individual, is the Publisher of Newsweek.  Pragad is a resident of Westchester County, New York, and is domiciled in the Southern District of New York.  Pragad is the initiator, orchestrator, and publisher of numerous defamatory articles that Newsweek published about Olivet. Pragad has visited Florida on multiple occasions to do business.

14. Defendant Cooper, an individual, is the Global Editor in Chief Emeritus and Advisor of Newsweek.  Cooper is a resident of New York County, New York, and is domiciled in the Southern District of New York.  Cooper is the writer, editor, and co-publisher of numerous defamatory articles that Newsweek published about Olivet.

15. Defendant Cunningham, an individual, is the Editor-in-Chief of Newsweek. Upon information and belief, Cunningham is a resident of New York County, New York, and is domiciled in the Southern District of New York. Cunningham is the writer, editor, and co-publisher of numerous defamatory articles that Newsweek published about Olivet.

16. Defendant Jamali, an individual, is the Newsweek Editor at Large. Jamali is a resident and domiciliary of New York, New York. Jamali is the author of numerous defamatory articles that Newsweek published about Olivet.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

18. There is complete diversity among the parties because Olivet is a corporation organized under the laws of the State of California with its principal place of business in Anza, California, and Pragad, Cooper, Cunningham, and Jamali are citizens and/or domiciliaries of New York.

19. The amount in controversy exceeds $75,000.00 (exclusive of interest and costs) because, as alleged herein, the false and defamatory statements written, edited, and published by Pragad, Cooper, Cunningham, and Jamali have caused have caused Olivet significant reputational, financial, and professional harm exceeding $100,000,000 dollars.

8

20. This Court has general personal jurisdiction over Pragad, Cooper, Cunningham, and Jamali because they are domiciled in the Southern District of New York.

21. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because the Defendants in this case reside in this District.

## FACTUAL ALLEGATIONS

22. Beginning prior to April 22, 2022, Pragad, Cooper, and Jamali—and later, Cunningham—orchestrated, wrote, edited, and published a series of 23 articles full of numerous false and defamatory statements detailing supposed criminal activity, associations, and investigations centering on Olivet. There are so many false and defamatory statements concerning Olivet throughout these articles that they are too numerous to count.

23. The articles orchestrated, written, edited, and published by Pragad, Cooper, Cunningham, and Jamali repeatedly, falsely tied Olivet University to non-existent or non-applicable money laundering and criminal probes. They repeatedly, falsely tied Olivet to other unsubstantiated or unrelated criminal and civil activity such as racketeering and dealing in counterfeit goods. They falsely state that Olivet is under review in multiple states.

24. The Defamatory Articles were published by Pragad, Cooper, Cunningham, and Jamali with malice after Pragad repeatedly threatened Olivet members in his text messages. From January to March 2022, weeks before the attack

campaign was launched by Newsweek against Olivet, Pragad stated the following: that he would launch a "nuclear bomb" on Olivet; that he would "detonate a nuclear bomb and kill" Olivet; that he would "prepare a news team to write about Olivet"; that he would mow down Olivet like "puppies before a machine gun"; that he would trigger a "congressional investigation" into Olivet; and that he would go to the "media" about Olivet and report it was engaged in "human trafficking." These are but a sampling of his call transcripts and text messages, which have been revealed publicly in the media and in lawsuits. Olivet also has copies of these call transcripts and text messages and testimony from the multiple witnesses who received them directly from Pragad.

25. Olivet filed this lawsuit to obtain remedies for its ongoing injury from the false and defamatory statements made by Pragad, Cooper, Cunningham, and Jamali in the Defamatory Articles.

### COUNT I
### DEFAMATION *PER SE*

26. Olivet incorporates by reference paragraphs 1 through 25 and re-alleges them as if set forth fully herein.

27. Pragad, Cooper, Cunningham, and Jamali orchestrated, wrote, edited, and published 23 articles, including the Defamatory Article, that were subsequently published on Newsweek's website and these articles repeatedly

made false and defamatory statements that Olivet pled guilty to money laundering—it did not; that Olivet is currently under investigation for human or labor trafficking—it is not; that associate Olivet with drug trafficking—it has never been accused of this by any law enforcement agency; and that associate Olivet with numerous other untrue accusations that Olivet is under criminal or any other investigation, when in fact it is not.

28. Specifically, the Defamatory Article makes numerous defamatory statements, as follows:

29. Cooper, Cunningham, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "Civil Suit Against Olivet to Proceed After Feds Decide Against Charges" on October 2, 2025.  The article integrated a complex linkback web that republished the 23-article campaign through at least 46 links via the topic pages for "Olivet University" and "David Jang," which Newsweek also associated with the defamatory keyword "Trafficking."

30. The article included the defamatory *per se* statement that: "Founded in 2000 by South Korean pastor David Jang, Olivet has been dogged by legal troubles for a decade."  This statement is false and defamatory.

31. The article also included the defamatory *per se* statement that: "One of the plaintiffs, Rebecca Singh, from India, called 911 in 2018 and said she was being held against her will at Olivet's rural campus, *Newsweek* previously reported."  This statement is false and defamatory and implies that Olivet

engaged in egregious criminal behavior, which it did not. The article also failed to mention that Singh's 911 call was fake, according to the police report log.

32. Cooper, Cunningham, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "With Olivet University in Jeopardy, David Jang's Sect Promotes New College" on September 10, 2025.  The article integrated a complex linkback web that republished every article in the entire attack campaign through at least 88 links via the topic pages for "Olivet University" and "David Jang," which Newsweek also associated with the defamatory keywords "Crime" and "Fraud."

33. The article's headline, "With Olivet University in Jeopardy, David Jang's Sect Promotes New College" was false and defamatory *per se*.  This statement is false and defamatory ostracizes Olivet from its evangelical Christian peers so that Olivet cannot engage its educational trade and business activities.

34. The article included the defamatory *per se* statement that: "Controversial pastor David Jang's disciples are pursuing accreditation for a new college as the sect's flagship school, Olivet University—accused in lawsuits of racketeering and trafficking foreign students—faces the prospect of losing its degree-granting status."  This statement is false and defamatory and implies that Olivet engaged in egregious criminal behavior, which it did not.  It

ostracizes Olivet from its evangelical Christian peers so that Olivet cannot engage its educational trade and business activities.

35. The article also included the defamatory *per se* statement that: "According to separate lawsuits, Olivet University is part of a web of churches, companies and colleges run by members of Jang's World Olivet Assembly, who are accused of using the college to bring in foreign students, forcing them to work for little or no pay and funneling the proceeds in racketeering schemes into real estate and other projects run by the sect." This statement is false and maliciously associates Olivet with egregious criminal and felonious activity, which Olivet has never engaged in. It is defamatory *per se*.

36. The article also included the defamatory *per se* statement that: "The college pled guilty to conspiracy in a money laundering probe by the Manhattan district attorney in 2020, and it lost its license to operate in New York in 2022 and its home state of California in 2024 for violating education regulations." This statement is false and maliciously associates Olivet with egregious criminal and felonious activity, which Olivet has never engaged in. Together with the statements above, the hyperlinks that were attached to the statements also add to the complexity of the linkback web scheme that republishes numerous articles in the attack campaign.

37. The article also included the defamatory *per se* statement that: "In 2021, agents from the Department of Homeland Security raided Olivet's main campus in

Anza, California, looking for evidence of visa fraud, labor trafficking and money laundering, according to federal and local officials." This is false, defamatory *per se*, and categorically denounced by Olivet as untrue, harmful, and malicious reporting fabricated by Newsweek and its hidden network of covert operatives, which Olivet intends to fully reveal through the Court process.

38. The article falsely associates Olivet with "Trafficking Allegations" and with the header: "Raise Money for the Cult."  These statements are false and defamatory *per se* as egregious criminal allegations and allegations that ostracize Olivet from its evangelical Christian constituencies.  It also falsely reports Olivet was "acting in concert to defraud creditors."  This statement is utterly false and defamatory *per se*.  The article also falsely reports in defamatory fashion that "Olivet's foreign student visas were a key issue for ABHE [Association for Biblical Higher Education, Olivet's federal accreditor]."  This reporting was based on zero evidence and ostracizes Olivet from current and potential students and other constituents.

39. Cooper, Cunningham, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "David Jang's Olivet Sect Hit With Racketeering Suit" on August 11, 2025.  The article integrated a complex linkback web that republished the entire attack article campaign through at least 42 links via the topic pages for "Olivet University" and "David Jang."

40. The article's headline, "David Jang's Olivet Sect Hit With Racketeering Suit" is defamatory *per se*. Olivet had nothing to do with any racketeering case, which court filings indicate has already been settled, without Olivet even being a party to the settlement. All charges against Olivet were dismissed as false before Olivet even needed to file a motion to dismiss.

41. The article also included the defamatory *per se* statement that: "Companies, colleges and churches with alleged links to David Jang's Olivet Christian sect are being sued by a creditor who is claiming at least $8.6 million in damages over allegations of racketeering and wire fraud." The article falsely and baselessly called Olivet a "sect" and falsely associated OU with a case that settled before OU was even *served* with the complaint. The article falsely associated Olivet with racketeering, which is egregious criminal activity of which Olivet has never been accused.

42. The article also included the defamatory *per se* statement that: "The lawsuit adds to the legal challenges facing the Olivet network of churches and colleges operated by Korean-American cleric Jang, whose Olivet University is under a separate and ongoing federal investigation over alleged money laundering, visa fraud and labor trafficking, according to federal and local officials." The statement is defamatory on its face—Olivet categorically denounces engaging in the egregious criminal behavior of "money laundering, visa fraud and labor trafficking." Despite that the defendants

15

already knew about the false and defamatory nature of this statement, the defendants maliciously moved forward with their attack by publishing it.

43. The article also included the defamatory *per se* statement that: "Olivet University has been under federal investigation for money laundering, visa fraud and labor trafficking since at least 2021, when agents of Homeland Security Investigations raided its campus in Anza, California, according to federal and local officials."  These statements are false and defamatory.

44. Cooper, Cunningham, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "Olivet University accreditation, visas under review after California ruling" on December 18, 2024 and republished through an "update" several days thereafter.  The headline of the article, "Olivet University Accreditation, Visas Under Review After California Ruling" is false and defamatory.

45. The article also included the defamatory *per se* statement that Olivet "faces new challenges to its ability to operate nationally. This comes as its accreditation and student visa-granting status come under scrutiny following the revocation of its permission to operate in California."  This statement is false and defamatory.

46. The article also included the defamatory *per se* statement: "[f]ounded by South Korean cleric David Jang in 2000, the university remains the subject of a labor trafficking and visa fraud probe by Homeland Security Investigations and

could face charges, according to agency emails." This statement is false and defamatory *per se*.

47. The article also included the false and defamatory *per se* statement that a state ordered Olivet's "closure on account of 14 education violations."

48. The article also included the defamatory *per se* statement that: "However, much of its ability to operate as a religious institution remains tied to its accreditation by the Association For Biblical Higher Education (ABHE)."

49. The defendants also defamed Olivet by stating that it "faces serious risks to its model if national authorities act against it."

50. Cooper, Cunningham, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "David Jang's Olivet University ordered to shut down in California," which was published on December 15, 2025, republished via an update on December 18, 2024, and republished at least 8 times thereafter through a complicated linkback scheme included in subsequent articles about Olivet.

51. The article included the defamatory *per se* statement that: "The university and Jang followers are also at the center of a federal criminal investigation into money laundering, visa fraud and labor trafficking, the latest in a series of legal controversies that have plagued the sect for more than a decade."

52. The article also included the defamatory *per se* statement that: "[California] is the only [state regulator] in the United States to confer degree-granting

authority on the college founded in 2000 by Jang, a Korean-American cleric whose organizations and disciples have faced a series of legal cases over the past decade." This ostracizes Olivet from its students, faculty, staff, partners, and constituents in other states and prevents Olivet from engaging in its educational business and trade because California obviously does not control, in any shape or form whatsoever, the degree-granting authority of *other* states in which Olivet is independently accredited and regulated. Nor does the article even attempt to describe how California would control the degree granting authority of Missouri, Florida, Washington D.C., or other states or territories, for instance, where Olivet is accredited.

53. The article also included the defamatory *per se* statement that: "Olivet University is also at the center of a criminal investigation that became public in 2021 when agents of the Homeland Security Department searched the Anza campus looking for evidence of labor trafficking, money laundering and visa fraud."

54. The article also included the defamatory *per se* statement that: "The U.S. Attorney's Office in California's Central District is investigating the case against Olivet University and any charges would need to be filed 'soon' before the statute of limitations run out, a document filed in a civil suit against Olivet showed in April." Newsweek's fabricated attack on Olivet falsely and baselessly accused Olivet of egregious criminal activity, which constitutes

defamation *per se*.  Needless to say, criminal charges were never filed, despite Newsweek's fabricated narrative.

55. Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "California opens hearing on Olivet University future as Feds circle," which was published on November 4, 2024.  The article was subsequently republished no less than 10 times in the past year through a complex linkback scheme that was incorporated into all of Newsweek's recent articles on Olivet.

56. The article included the defamatory *per se* headline text that: "Feds Circle." The "[f]eds" did not "[c]ircle" Olivet in any way, shape, or form, and Newsweek's fabricated accusations of egregious criminal activity at Olivet inherently constitute defamation *per se*.

57. The article also included the defamatory *per se* statement that: "A California tribunal began hearings Monday on the fate of Olivet University, a college founded by the leader of a religious sect that is beset by criminal probes and lawsuits and is under growing media scrutiny."

58. The article also included the defamatory *per se* statement that: "Similar allegations have already led regulators in eight states and territories to shutter Olivet campuses or begin reviews of the college."  Newsweek's fabricated allegations in this statement are utterly false.

59. The article also included the defamatory *per se* statement that: "it is the only one in the United States to confer degree-granting authority on the college founded in 2000 by David Jang, a Korean-American cleric whose organizations and disciples have faced a series of legal cases over the past decade."

60. The article also included the defamatory *per se* statement that: "Olivet University is also at the center of a criminal investigation that became public in 2021 when agents of the Homeland Security Department searched the Anza campus looking for evidence of labor trafficking, money laundering and visa fraud."

61. The article also included the defamatory *per se* statement that: "The U.S. Attorney's Office in California's Central District is investigating the case against Olivet University and any charges would need to be filed 'soon' before the statute of limitations run out, a document filed in a civil suit against Olivet showed in April."

62. The article also included the defamatory *per se* statement that: "A 2023 lawsuit filed by Texas-based 8fig accuses the World Olivet Assembly, the church founded by David Jang, of using a network of online storefronts and other companies to defraud it of more than $6.5 million. One of the defendants in that case, Park, was named this year as president of Olivet University."

63. Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "Olivet University must be fully investigated, Congressman says" on May 28, 2024.  The article was repeatedly republished at least a dozen times through a complex linkback scheme orchestrated by the defendants.

64. The headline, "Olivet University Must be Fully Investigated, Congressman Says" was false and defamatory.  The congressman himself stated to Olivet on the record that he never said this.

65. The article also included the defamatory *per se* statement that: "U.S. Congressman Ken Calvert, a California Republican, called for law enforcement to fully investigate the criminal allegations against Olivet University, whose main campus lies on the outskirts of the high desert town of Anza in his district." The congressman himself stated to Olivet on the record that he never said this.

66. The article also included the defamatory *per se* statement that: "Some of Calvert's constituents in the area around Anza voiced alarm at the allegations of criminal activity on the remote campus. Most of those *Newsweek* interviewed said they would like to see authorities act more aggressively. In a follow up conversation, one local store owner said a senior Jang disciple and three men had paid a visit to ask about the interaction with *Newsweek*."

67. The article also included the defamatory *per se* statement that: "Olivet's Anza campus was raided in 2021 by agents of the Department of Homeland Security searching for evidence of labor trafficking, visa fraud and money laundering."

68. The article also included the defamatory *per se* statement that: "Calvert, who was first elected to Congress in 1992 and now represents the newly redrawn 41st district of California, expressed concern about the safety of students at Olivet University when asked about the situation by *Newsweek*." This fabricated report by Newsweek is utterly false and defamatory.

69. The article also included the defamatory *per se* statement that: "Jang and some top disciples are being sued by four former students from India, Spain and Venezuela who say that they came to the Christian college under the promise of scholarships only to be told they were in debt and required to work to pay it off. Their passports were seized and their ability to leave campus was restricted, the lawsuit alleges." These students have been sued for civil fraud because of their lies. Their outrageous statements are completely fabricated. The defendants knew their statements were fabricated but knowingly and maliciously published them anyway. In fact, the defendants were involved in orchestrating the lawsuit.

70. The article also included the defamatory *per se* statement that: "That lawsuit was thrown into limbo when attorneys for both parties told the court that

labor trafficking allegations against Olivet were now the subject of a criminal investigation by the U.S. Attorney's office in Riverside County."

71. The article falsely associated Olivet with "a counterfeit goods case in North Carolina, a racketeering suit in Texas and numerous tax and business disputes around the country." This constituted defamation *per se*.

72. Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "US Attorney on Olivet University case, charges may come 'soon,' court told," on April 4, 2024.  The article was repeatedly republished at least 14 times through a complex linkback scheme orchestrated by the defendants.

73. The statement in the article's headline that "Charges May Come 'Soon,'" was false and defamatory *per se*.

74. The article also included the defamatory *per se* statement that: "The U.S. Attorney's Office in California's Central District is investigating a criminal case against Olivet University and any charges would need to be filed 'soon' before the statute of limitations run out."  No charges were filed against Olivet in this fabricated witch hunt by the defendants.

75. The article also included the defamatory *per se* statement that: "Olivet University, founded by Korean-American cleric David Jang, has been under federal investigation at least since agents of the Homeland Security Investigations raided its campus in the California town of Anza three years

ago looking for evidence of visa fraud, money laundering and labor trafficking."

76. The article also included the defamatory *per se* statement that: "Harris, the lawyer who contacted the U.S. Attorney's office, represents a group of former Olivet University students in a civil suit that claims they were trafficked by Jang and his followers who lured them to the United States with offers of full scholarships and then forced them into manual labor without pay. Olivet has denied the accusations and countersued the students."

77. The article also included the defamatory *per se* statement that: "Various members of Jang's sect, the World Olivet Assembly, have faced legal troubles for much of the past decade, including a money laundering probe in Manhattan which ended in several guilty pleas, a counterfeit goods case in North Carolina, a racketeering suit in Texas and numerous tax and business disputes around the country."

78. The article also included the defamatory *per se* statement that: "The college has now been shut down or placed under review in at least 10 states and territories."

79. Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "Olivet University gets reprieve from accreditor for one year," on March 6, 2024.  The article was republished no less than 16 times since then, including at least 10 times in the last one year.

24

80. The article included the defamatory *per se* statement that: "The California case is the latest in a series of controversies surrounding David Jang's followers. Some members of Jang's sect, the World Olivet Assembly, have been in legal trouble for much of the past decade, including a money laundering probe in Manhattan which ended in several guilty pleas; a counterfeit goods case in North Carolina; a racketeering suit in Texas and numerous tax and business disputes around the country."

81. The article also included the defamatory *per se* statement that: "This lawsuit covers some of the same ground as a federal investigation into Olivet University. The investigations arm of the Department of Homeland Security is looking into whether Olivet University and Jang's disciples committed labor trafficking, visa fraud and money laundering, Newsweek has reported."

82. The article also included the defamatory *per se* statement that: "Newsweek has confirmed in recent weeks that the federal investigation is still underway."  This fabricated report by the defendants egregiously associated Olivet with federal, criminal, felonious activity, of which Olivet was never accused.

83. The article also included the defamatory *per se* statement that: "The college has now been shut down or placed under review in at least 10 states and territories."  This is false and ostracizes Olivet from its constituents in multiple states and harms its trade and business as an educational institution.

25

84. Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "David Jang trafficked Olivet University students, lawsuit claims" on February 2, 2024.  The article was repeatedly republished at least 18 times through a complex linkback scheme orchestrated by the defendants, including at least 10 times in the last year.

85. The headline, "David Jang Trafficked Olivet University Students" is defamatory *per se*.

86. The article also included the defamatory *per se* statement that: "Some members of Jang's sect, the World Olivet Assembly, have been in legal trouble for much of the past decade, including a money laundering probe in Manhattan which ended in several guilty pleas; a counterfeit goods case in North Carolina; a racketeering suit in Texas and numerous tax and business disputes around the country."

87. The article also included the defamatory *per se* statement that: "This lawsuit covers some of the same ground as a current federal investigation into Olivet University. The investigations arm of the Department of Homeland Security is looking into whether Olivet University and Jang's disciples committed labor trafficking, visa fraud and money laundering, *Newsweek* has reported."

88. The article also included the defamatory *per se* statement that: "In March 2018, Singh called 911 and said she was being held against her will at Olivet's campus in Anza, California, *Newsweek* has previously reported."

89. Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "Settlement spares David Jang's Olivet Assembly from racketeering lawsuit," September 1, 2023.    The article was repeatedly republished at least 20 times through a complex linkback scheme orchestrated by the defendants, including at least 10 times in the last year.

90. The headline, "David Jang's Olivet Assembly From Racketeering" is defamatory *per se*.

91. The article also included the defamatory *per se* statements that falsely associated Olivet with pleading guilty to a misdemeanor "in connection with a money-laundering scheme" and with being a "sect."

92. The article also included the defamatory *per se* statement that falsely associated Olivet with egregious and felonious international crimes including "Jang-related e-commerce in China… suspected of being part of a 'trade-based money laundering' scheme" of which Olivet has never been accused by any authority whatsoever.

93. Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "World Evangelical body cuts ties with David Jang's embattled Olivet sect," on July 19, 2023.  The article was repeatedly republished at least 22 times through a complex linkback scheme orchestrated by the defendants, including at least 10 times in the last year.

94. The article also included the defamatory *per se* statement that: "Jang has faced allegations from critics that he was running a messianic cult."

95. The article also included the defamatory *per se* statement that Jang was a "messianic figure." The defendants knowingly published this falsehood to falsely Olivet University's founder with egregious cult-like behavior that would disassociate Olivet from its evangelical Christian peers and make it virtually impossible for Olivet to carry out its Christian educational business.

96. The article also included the defamatory *per se* statement that stated Olivet had been involved with "pleading guilty to charges brought in a money laundering investigation by the Manhattan District Attorney."

97. Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "Newsweek shareholders end legal dispute, co-owner Davis leaves Olivet sect," on July 19, 2023. The article was systematically republished at least 24 times through a complex linkback scheme orchestrated by the defendants, including at least 10 times (but likely more) in the last year.

98. The headline of the article is defamatory. The headline of the article is, "Newsweek Shareholders End Legal Dispute, Co-owner Davis Leaves Olivet Sect." The headline inaccurately states that the "shareholders" ended the legal dispute, but in fact, the ownership of Newsweek was still being disputed, and is still disputed. But Newsweek did not report on this dispute, despite Cooper's public letter stating that Newsweek would vigilantly cover

news about its "owners."  Instead, the article only covered news focused on
attacking Olivet.  For this reason, the headline is false and misleading.

99. The headline also falsely and baselessly portrays Olivet as a "sect," despite
the press release the article references not mentioning the word "sect," nor
Newsweek providing any basis whatsoever for this defamatory portrayal.
This false portrayal harms Olivet by ostracizing the university from its peers
and preventing it from doing business among evangelicals, whether those
evangelicals are students, faculty, staff, or partner organizations.  This is
defamation per se.

100.   For the same and similar reasons, the statement that Olivet is a "sect" that
had "been embroiled in the [Newsweek ownership] litigation" is false and
defamatory.  Olivet is not a sect, and no basis was given for this utterly false
and repugnant claim.   Neither was Olivet "embroiled" in Newsweek's
ownership litigation.   Rather, Newsweek sued Olivet, and then repeatedly
failed to report that it was in fact Newsweek that initiated government
investigations into Olivet, sued Olivet, and then falsely reported on Olivet, all
while hiding the misdeeds of Newsweek's management.   These statements
are defamatory towards Olivet.

101.   The statement "[d]isciples of controversial sect leader David Jang had
sought to bring the publication under their control through a flurry of legal
actions that the company countered with its own suits against Jang, Olivet

29

and other groups associated with the Korean-American pastor" is false and defamatory. In the context of Olivet's evangelical Christian ministry, it is defamatory to baselessly call it a sect. In the context of calling Olivet a "sect" it is reckless and defamatory to refer to David Jang as a "leader" of the university, and to use the term "disciples" to refer to Olivet's staff. This is defamatory per se because it harms Olivet's relationship with other evangelicals, which is the core foundation of its ministry. It is also defamatory to refer to Dr. David Jang, Olivet's retired founder, as "controversial" and to associate him with criminal activity, for which he has never been accused. This misappropriation and malicious, harmful, and reckless association of his name, image, and likeness also represents defamation per se towards Olivet University, which he founded.

102.   The statement that Newsweek refused to "respond to a request for comment on the details" of its settlement represents defamation by omission. The hypocritical hiding of the truth by Newsweek harmed Olivet because this active fraud by Newsweek made it impossible for Olivet to set the story straight in the media, even though Olivet repeatedly attempted to lay out the facts about Newsweek's scheme, and its motives for writing negative articles about Olivet, in public relations statements. This publicly damaged Olivet's reputation in front of its evangelical constituents, further ostracizing it from its peers, making it nearly impossible to do business in its field.

103.   The statement that "IBT Media" is "one of the Jang-affiliated companies involved in the litigation" that "said it intended to fight on in court" is false and defamatory.   In the context of calling Dr. Jang a "sect" leader, this represents misappropriation of Dr. Jang's NIL rights, baselessly associates Jang with IBT, despite the fact that he is a retired evangelical professor that is not associated with IBT.

104.   The statement that Pragad "said at the time that he wanted to protect the company and its newsroom from followers of Jang" is defamatory.   It is actually the university that needs to be protected from Pragad and his malicious and reckless media attacks that followed his explicit threat to launch a media "nuclear bomb" on Olivet.   It also contradicts Pragad's sworn declaration in another case where he states that he had no interaction with the Newsweek newsroom, whereas here, he stated that he wanted to "protect" his newsroom from Olivet and Dr. Jang.   Creating the false impression that there is reason to need protection from Olivet University or its founder, Dr. Jang, is defamatory.

105.   The statement "followers of Jang," in the context of calling Dr. Jang a "sect" leader, is defamatory.   The statement that these individuals were "now under criminal investigation by the Department of Homeland Security" is false, defamatory, and Newsweek knew or should have known this statement was false and defamatory.   This is therefore defamation per se.

106.   The statement that "Jang's disciples have repeatedly tried and failed to shut down the Newsweek newsroom's reporting of Olivet's legal troubles, and the disputes have threatened to hobble the publication's business as long as either of its co-owners was connected to Olivet" is false and defamatory. First, it is an invasion of privacy and misappropriation of the name, image, and likeness of Olivet's founder.  Second, to associate Olivet with "disciples" in a "sect" is defamatory, considering Olivet University is an evangelical, Christian institution.   This is also a baseless accusation, maliciously and recklessly grounded in zero facts or reporting.  Third, the entire statement is baseless.  It is false and defamatory that Olivet ever "tried and failed to shut down the Newsweek newsroom's reporting of Olivet's legal troubles" and that "the disputes… threatened to hobble the publication's business as long as either of its co-owners was connected to Olivet."  This groundless statement gaslighting the public was based on zero factual reporting.  Newsweek maliciously and recklessly does not even attempt to provide a basis in fact or reality to justify this statement.  The statements in this article also represent defamation by implication by casting Olivet in a defamatory light, as if Olivet has taken any out-of-proportion or aggressive or violent action towards Newsweek, but such action never occurred.  Similarly, it is knowingly false and defamatory to publish that any individual's connection to Olivet could somehow "hobble" Newsweek.

107. The statement that "Johnathan Davis did not answer questions" is hypocritical and also represents defamation by omission. Newsweek, despite being a media company that should be transparent towards the public, has somehow managed to fail reaching its "owners" for any statement for multiple years, despite their own editor saying it was her duty to vigilantly cover Newsweek's owners. Newsweek justified its coverage of Olivet in 20+ articles by stating that it needed to cover its owners. But instead, Newsweek failed to cover the past and current ownership disputes of Newsweek, including the related controversial statements of Pragad and Davis about this matter. The conclusion of this logic is that even Newsweek's own newsroom implicitly acknowledges that investors beyond Pragad and Davis are the true owners of Newsweek. Furthermore, by ethics washing the despicable actions and lies of Pragad and Davis, Newsweek is in fact defaming Olivet by omission, and the Newsweek newsroom is complicit in this fraudulent activity. Ironically, Newsweek does this while acknowledging that Newsweek itself was built by "IBT Media… and Etienne Uzac," who "acquired Newsweek in 2013 after spells of ownership under the late electronics entrepreneur Sydney Harman and media mogul Barry Diller, and set about rebuilding its digital and print businesses," not by Pragad.

108. Linking to Newsweek's "Olivet University" topic page is defamatory because it incorporates by republication a link that redirects Newsweek

readers to all kinds of false, baseless, and crazy criminal accusations against Olivet, defaming Olivet.

109.   The statement that "the publication was dogged by questions over its links to the Olivet sect, not least after its offices were raided in 2018 by agents of the Manhattan District Attorney investigating a money-laundering scheme" is false and defamatory.   It is false that Olivet is a "sect."   There is also no explanation of how an Olivet question would "dog" Newsweek — other than, of course, the fact that Newsweek attacked Olivet in a series of over 20 systematic, orchestrated hit pieces.

110.   The statement that "people and institutions associated with Jang" pleaded "guilty in the Manhattan DA's probe" is false and defamatory.   Jang, Olivet University's founder, was never accused of any wrongdoing in any DA probe, and has never been accused or investigated for any criminal activity.   This false association defames the university and harms its reputation. Furthermore, the context here in the article is that Newsweek falsely attempts to associate Olivet with the "money laundering" from the previous sentence. Olivet University never pleaded guilty to money laundering, as falsely reported by Newsweek before it was forced to retract this false statement after getting sued.

111.   The statement that a business deal "had been contrived by Jang's disciples to avoid scrutiny by prosecutors and the media" is false and defamatory

because it was actually Pragad himself that contrived such a deal, as has been revealed in a federal lawsuit in the United States District Court in the Southern District of New York.

112.    The statement in the article that "IBT intends to continue to vigorously pursue its claims to restore its rightful ownership to the Newsweek assets, including pursuing its pending appeal" contradicts the article's headline that Newsweek ownership disputes have come to an "end," and shows that the article itself is based on a false premise, falsely and baselessly associating Olivet with wrongdoing, when it is actually Newsweek and its covert team of Olivet attackers that are the wrongdoers.

113.    The following statement is false and defamatory: "Meanwhile, Olivet's legal woes have been deepening. Homeland Security Investigations raided Olivet University's main campus in the California town of Anza in April 2021, looking for evidence of money laundering, visa fraud and labor trafficking. It was raided again in November 2022, this time by education investigators in California. California's attorney general subsequently filed a complaint asking for Olivet to be shut down." Olivet's legal woes were not "deepening" due to an April 2021 search that was now being reported by Newsweek over two years later in June of 2023. Nor were they "deepening" due to a visit from California education department officials in November 2022, eight months prior to this article's publication. Olivet was not "raided." Olivet welcomed

these state agency officials and toured them around the campus. Olivet also fulfilled their document requests and answered any questions they had. Olivet did not commit "money laundering, visa fraud and labor trafficking." California's attorney general never asked for Olivet to be "shut down." These statements are each false instances of defamation per se.

114.    The statement that "Olivet University had already been shut down in New York and has been closed or put under review in half a dozen states across America" is false and defamatory. Olivet has not been "shut down" by the state of New York or any state, and therefore this statement is misleading and maliciously and recklessly harms Olivet's reputation. Furthermore, Newsweek directly instigated regulatory investigations into Olivet, as revealed in a tortious interference lawsuit against Naveed Jamali and other Defendants here, which Olivet filed in the Southern District of New York on June 29, 2025. Yet Newsweek did not report that its own team instigated these investigations into Olivet by gaslighting public officials around the country, leveraging the significant Newsweek brand power to do so.

115.    The statement that Olivet's "sole accreditor, the Association for Biblical Higher Education, has put the university's status on review" specifically targets a Florida institution that regulates Olivet University nationally. The article was designed to attack Olivet's Florida and national accreditation. Repeatedly defaming Olivet and then specifically designing the article to

attack Olivet's accreditation status in Florida and nationwide amplifies the defamatory effect of the article.  This harms Olivet in its trade or business and is therefore another instance of defamation per se.

116.    Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "California moves to shut down David Jang's Olivet University as feds circle," on March 28, 2023.  The article was repeatedly republished dozens of times through a complex linkback scheme orchestrated by the defendants, including at least 10 times (but likely many more) in the last year.

117.    The headline of the Defamatory Article is defamatory for at least three reasons.  The headline of the article is, "California Moves to Shut Down David Jang's Olivet University as Feds Circle."  The first reason this is defamatory is it falsely portrays California as having the power to "shut down" Olivet University.  Olivet operates under a religious exemption in California.  The term "university" is not protected in California and Olivet is allowed by law to use this name under its religious exemption. Furthermore, Pragad, Cooper, and Candappa clearly knew that Olivet operates campuses in other states, and nationwide.  Any reasonable reporter would understand that California only has jurisdiction over the California-based Olivet campus.  California has no jurisdiction, or ability to "shut down" Olivet University, which is (1) allowed to operate in California under religious exemption, and (2) licensed, or, operates under religious exemption, in several other states, independently

from California.  Portraying California as potentially able to "shut down" Olivet University injures Olivet in its trade or profession because it indicates that Olivet can no longer offer its educational services to students, can no longer engage in business activities with vendors, and can no longer associate with partners, especially Christian organizations and leaders.  Newsweek's claim that Olivet could be "shut down" by the state of California is a falsehood that is incompatible with Olivet's proper exercise of its educational mission to train Christian leaders and confer degrees upon them as an institution of higher education.

118.  The second reason the headline is defamatory is because it improperly invokes Olivet's founder, David Jang, a retired, evangelical, Korean-American professor.  Not only is this a misappropriation of Professor Jang's name and an invasion of his privacy as a retired teacher, but also it defames Olivet by associating its founder with extreme criminal activity for which he has never been accused, nor investigated, whatsoever.  In fact, he has been retired for more than a decade, and he had already retired before any of the activity that the defendants alleged took place.    Associating Olivet's founder with criminal activity that even Pragad, Cooper, and Candappa fail to connect him to in this article, is defamatory *per se* (1) because of the nature of the false allegations of serious criminal activity, like money laundering, human trafficking, and more, that Newsweek associates Olivet's founder with in the

article, and (2) because this association damages Olivet in its trade or business by ostracizing it from the national and global Christian communities it was founded to serve. Needless to say, the attempt by Pragad, Cooper, and Candappa to associate the founder of a Biblical institution with criminal activity cuts to the core of its ability to do business within Christian circles. This is because Christianity involves salvation by Jesus Christ and sanctification, including the spiritual practice of Biblical principles following the power of the Holy Spirit, that are at odds with the criminal activity alleged by Pragad, Cooper, and Candappa. The intention of Pragad, Cooper, and Candappa is to portray retired Professor Jang as an unethical or untrustworthy Christian hypocrite, and therefore poison the whole university through this false association. This is false and defamatory.

119.    The third reason the headline is defamatory is because it states that "Feds Circle." According to Pragad, Cooper, and Candappa, the feds were circling because Olivet was at the center of a federal investigation into serious criminal activity. This is false and defamatory. The Court stated in its Order, at 10, ECF No. 42, that in Florida, defamation *per se* is found when a defamatory statement declares "that a person has committed and infamous crime… [meaning] a felony." *Black's Law Dictionary* defines "felony" as "[a] *serious crime*" that is "punishable by imprisonment for more than one year or

by death." Falsely associating Olivet with a federal investigation implicates Olivet in the commission of a *serious crime*, and is therefore defamation *per se*.

120.   The feds were not circling. In fact, Pragad, Cooper, and Candappa utterly abrogated their responsibilities as writers, editors, and publishers to understand the very topic they attempted to cover. First, Olivet was never the target of any such investigation. Therefore, the feds could not be circling around Olivet. Secondly, Newsweek's own reporting tied the start of his so-called fed investigation to a 911 call that occurred on March 27, 2018.[5] The Defamatory Article was published more than five years after the event that Newsweek claims led to the so-called investigation, meaning that the federal statute of limitations (five years) for the very crimes Newsweek alleged had already passed by the time the false accusations of Pragad, Cooper, and Candappa were published.

121.   The article published by Pragad, Cooper, and Candappa falsely and defamatorily states that, "California's Attorney General has taken legal action that could *shut down Olivet University*, threatening a devastating blow to a global Christian *sect at the center of a U.S. federal investigation into money*

---

[5] Naveed Jamali and Alex J. Rouhandeh, *Olivet Student's Desperate 911 Call Led to Federal Trafficking Probe*, NEWSWEEK (July 18, 2022), https://www.newsweek.com/olivet-students-desperate-911-call-led-federal-trafficking-probe-1725320 ("On March 27, 2018, at 11:03PM, deputies from the Hemet Sheriff's Station received a call for service from an unknown female…"). See also the contents of the Defamatory Article itself, which states the criminal allegations stem from "an investigation *triggered* by a 911 call from a female student who said she was held at Anza against her will" (emphasis added).

*laundering, visa fraud and other suspected crimes"* (emphasis added).  Pragad, Cooper, and Candappa inaccurately state that California will "shut down Olivet University."  California is not able to "shut down" Olivet University, but sought to limit its programs within California state only.  This contradicts the  reporting elsewhere in the same article by Pragad, Cooper, and Candappa that speaks of Olivet's presence in multiple states, where California has no jurisdiction and no ability to "shut down" Olivet University.  This defamation seriously injures Olivet's trade and profession as a Christian university.

122.    It is defamatory that Pragad, Cooper, and Candappa characterized Olivet as a "sect."  This naked assertion about Olivet's religious affiliation made by Pragad, Cooper, and Candappa was published with not a smidgeon of reporting or evidence to back it up.  This statement injures Olivet in its trade or profession because it separates Olivet from its evangelical peers, ostracizes it from potential students and partners, and makes it a pariah, appearing un-Christian, when the whole basis of its institution is its Christian faith.  This Christian faith is professed across its website, its marketing materials, its handbooks, and in meetings with professors, students, administrators, and partners.  All of these relationships are deeply damaged by the bare, and utterly false assertion, unethically made based on zero actual reporting by Pragad, Cooper, and Candappa.   Therefore, calling Olivet a "sect" is

defamatory *per se* on the grounds that it speaks to behavior incompatible with the proper ethical or professional conduct of the institution's business trade.

123.    As stated above and for the same or similar reasons, it is false and defamatory that Pragad, Cooper, and Candappa stated Olivet was "*at the center of a U.S. federal investigation into money laundering, visa fraud and other suspected crimes*" (emphasis added).    Particularly, money laundering is a serious state or federal felony.    Visa fraud is also a serious felony.    Both of these false accusations consist of defamation *per se*.

124.    Pragad, Cooper, and Candappa stated that Olivet committed "other suspected crimes" and "drug trafficking."    Olivet alleges that the context of the article must be taken into account.    The text "other suspected crimes" comes in an article filled with statements associating Olivet with nefarious activity, including serious felonies like money laundering, human and labor trafficking, and visa fraud, none of which Olivet ever committed.    In fact, Olivet has not been held accountable for anything more than a misdemeanor, a crime that would not even be serious enough to allow for a defamation *per se* claim.    But Newsweek exclusively accuses Olivet of serious felonies.    In this context, "other suspected crimes" implies serious felonious activity, and amounts to defamation *per se*.    The average reader would understand it as much.

125.   Furthermore, Pragad, Cooper, and Candappa hyperlinked the very same sentence about Olivet's "other serious crimes" to its "Olivet University" "Topic" page, which, in turn, contains links that associate Olivet with drug trafficking, including fentanyl trafficking.   Other links from Newsweek's Olivet University and David Jang "Topic" pages, included in the article, associate Olivet with racketeering.   Each of these activities are serious federal crimes.   This is how Pragad, Cooper, and Candappa associated Olivet with drug trafficking, racketeering, and "other suspected crimes," each false and defamatory *per se*.

126.   The statement that "California is by far Olivet's most important state regulator: it is the only one in the United States to confer degree-granting authority on the college founded in 2000 by David Jang, a Korean-American cleric whose organizations have faced a series of legal cases over the past decade" made by Pragad, Cooper, and Candappa is false and defamatory. Newsweek's statement is wrong because Olivet can confer degrees in other states.  This statement seriously injures Olivet's trade and business because it implies that Olivet does not have the legal authority to confer degrees in other states, which it does.   This false narrative defames Olivet in front of its students in other states, its faculty in other states, its partners in other states, and its potential students, faculty, partners, and friends in all states.

127.   The statement that David Jang is a "cleric" is false and defamatory. Professor Jang is not a "cleric," has never held himself out to be a "cleric," has never been a "cleric," and frankly, no one at Olivet University has ever used the term "cleric" to describe anyone, or anything, in their school.   This statement is false, defamatory, and harms Olivet in its trade or business for the same or similar reasons as the use of the word "sect" by Pragad, Cooper, and Candappa does.   "Cleric" is not a term associated with evangelical Christianity, and by stating that Professor Jang is a cleric, Pragad, Cooper, and Candappa stripped Olivet's founder of his dignity and diminishes Olivet's ability to professionally associate with other Christians by casting a shadow over its founding heritage.   This statement orchestrated, written, edited, and published by Pragad, Cooper, and Candappa, like all the others, is false and defamatory.   It is also a privacy invasion and constitutes misappropriation of Jang's name, image, and likeness rights.

128.   The statement that "one witness who is cooperating with separate Homeland Security investigations into Olivet said messages on computers seized from the Anza campus could be evidence of money laundering activity," by Pragad, Cooper, and Candappa is false and defamatory because it falsely associates Olivet with serious criminal activity, including money laundering, while unethically relying on an anonymous, untruthful witness without credibility.

44

129.   The statement that Olivet "in an email repeated allegations against
Newsweek of 'weaponizing its newsroom' because of an ownership dispute"
by Pragad, Cooper, and Candappa is false and constitutes defamation by
omission.  Newsweek failed to investigate its own leadership and failed to
accurately represent its own newsroom, which represents a professional
failure as well as potential fraud.  Newsweek and the failure to investigate its
leadership by Pragad himself, and by editors Cooper and Candappa, is also
proof that the newsroom is complicit in the actions of its management. By not
investigating such an obviously newsworthy story about its own Publisher,
Cooper and Candappa show their awareness that their management has
wrongdoing that they should not uncover.  This defames Olivet by omission
because Newsweek's failure to report accurately on itself leads the average
reader to an impression that Olivet's accurate portrayals of the motivations of
Pragad, Cooper, and Candappa and Newsweek are false, hindering Olivet's
ability to counter the nefarious, false narrative Pragad, Cooper, and Candappa
paint about Olivet, which causes damage to Olivet's trade and business as a
Christian institution.

130.   The photo of Professor Jang published by Pragad, Cooper, and Candappa
is defamatory and the photo's caption is false and defamatory.  The caption
reads, "An image of Olivet founder David Jang appears in the top right
corner. The California government seeks to shut down the embattled college."

45

For reasons stated above, use of Jang's name, image, and likeness is false and defamatory, a privacy invasion, and misappropriation. It unjustifiably associates the university's founder with false allegations of criminal activity that he took no part in, thus damaging Olivet's ability to operate in its trade or business. It is also false that California sought to "shut down" Olivet University. Nowhere in any California filings was an objective to "shut down" Olivet stated. Nor is it possible for California to do so, due to Olivet's religious exemption and nationwide footprint. Thus, Pragad, Cooper, and Candappa seriously mislead the public and severely harms Olivet.

131.    The statement that "[s]imilar allegations have already led regulators in eight states and territories to shutter Olivet campuses or begin reviews of the college" by Pragad, Cooper, and Candappa constitutes defamation by omission. Pragad, Cooper, and Candappa, either intentionally or recklessly, failed to report that many state regulators found, and continue to find, Olivet compliant, despite the years'-long attacks and agitations by Pragad, Cooper, and Candappa. This glaring omission by Pragad, Cooper, and Candappa defames Olivet because it harms Olivet's business and trade, casting a false, negative shadow over Olivet and ostracizing Olivet from its students, faculty, and key partners around the country.

132.    The statement that "the Department of Homeland Security has an unrelated investigation into whether Olivet laundered money," by Pragad,

Cooper, and Candappa is false and defamatory.  Olivet is not the target of any investigation into money laundering, has never laundered money, and does not have any felony record.   Based on Newsweek's own reporting, the underlying activity Pragad, Cooper, and Candappa accuses Olivet of would have begun more than five years prior to the publication of this article, and the federal statute of limitations would have already run.  This utterly false and defamatory statement accuses Olivet of serious criminal activity and is defamatory *per se*.

133.    The statement that "[the Department of Homeland Security] is also looking at whether [Olivet] trafficked labor and broke visa laws with regard to the students on its campus, many of whom come from China" orchestrated, written, edited, and published by Pragad, Cooper, and Candappa is false and defamatory.  Olivet never trafficked labor or broke visa laws, with regards to Chinese students or any students, all instances of serious felonious behavior that Pragad, Cooper, and Candappa maliciously and recklessly accuse Olivet of engaging in.  Olivet has thousands of student and alumni witnesses around the world that have frequently been through its campuses and can attest to the utter falsity of this statement.  This is also defamation by omission because in all of his years of reporting on Olivett, and despite Pragad, Cooper, and Candappa sending Rouhandeh himself to visit the town of Anza, where Olivet University is located, Pragad, Cooper, Candappa, and Rouhandeh

never even attempted to try to make an appointment with the school for an on-campus interview. Should Rouhandeh have visited the school, the malicious and reckless false suspicions and reports by Pragad, Cooper, and Candappa would have easily been disproven. They intentionally avoided such a visit because they knew any such visit would disprove their false allegations.

134. The following statements included in the article authored by Pragad, Cooper, and Candappa are false and defamatory: "For years, California had done little to confront Olivet even as other regulators cracked down on the university, accusing it of operating unlicensed campuses, making incomplete disclosures, mismanaging finances and failing to cut ties to 'criminal activity,' among other issues. Both New York and California found Olivet had broken various rules soon after the college pleaded guilty in 2020 to a money laundering charge brought by the Manhattan District Attorney." The article covers California regulators and "other regulators," in the plural, that "cracked down" on the university. That indicates there are at least three regulators: California regulators, and at least two other state's regulators. But, other than California, Pragad, Cooper, and Candappa only cite New York as having had an issue, despite Olivet's operations spanning numerous states. New York represents a single other state regulator, not multiple. This statement creates a false impression and harms Olivet's business and trade

because Olivet's state regulators in other states, or other readers of Newsweek, would be given the impression that Olivet is not in good standing in multiple states. In fact, the opposite is true.

135. The statement made by Pragad, Cooper, and Candappa that Olivet "pleaded guilty in 2020 to a money laundering charge" is false and defamatory *per* se. Olivet never pleaded guilty to a money laundering charge, a fact which Pragad, Cooper, and Candappa know full well, and knew full well at the time of publication, yet still brazenly plowed ahead in orchestrating, writing, editing and publishing, hell-bent on their joint mission with the Newsweek covert team members to drop a "nuclear bomb" on Olivet.

136. The statement by Pragad, Cooper, and Candappa that "Olivet administrators attempted to evade" California state regulators is false and defamatory. In no instance did California regulators ever accuse Olivet administrators of attempting to "evade" them. Rather, if what Pragad, Cooper, and Candappa published is true, California regulators boldly and illegally trespassed on Olivet's private property.[6]

---

[6] The article states that California administrators entered the private property of Olivet University without permission: "'Upon arrival, Bureau staff could not enter the campus location as the campus was secured by a security gate,' according to the complaint, which chronicles the many phone calls investigators made to try to get inside the campus. Finally, 'bureau staff were able to gain access to the campus by following a car who (sic) accessed the gate. No staff was present in the Administration office,' the complaint said." First, this does not describe any attempt by Olivet to "evade" the California regulators. Second, it describes a series of events that would amount to

137.  The statement by Pragad, Cooper, and Candappa that "[t]he allegations laid out in the 31-page complaint resemble those uncovered by Newsweek's previous reporting" is false and defamatory.  Here, Pragad, Cooper, and Candappa point to their systematic attack campaign against Olivet.  But, none of the allegations listed in the California regulator's complaint were mentioned at all in previous Newsweek reporting.  As detailed in this complaint, Newsweek's coverage focused heavily on falsely associating Olivet with hardcore criminal activity such as money laundering, human trafficking, and visa fraud.  By contrast, the California regulators were concerned with issues like this: "[t]he syllabus for a Bible course wasn't available" and "[t]he professor of microeconomics, for example, delivered a virtual lecture to students who were present on campus in a 'hybrid class' which itself broke the rules."  The last Olivet checked, delivering a hybrid class lecture is not "serious crime" that is "punishable by imprisonment for more than one year or by death."

138.  Newsweek's mischaracterization of its own coverage of Olivet therefore constitutes defamation by omission, defamation by implication, and defamation *per se*.  Newsweek attempts to validate its own false and defamatory reporting by stating it is similar to California regulator reports,

---

criminal or civil trespassing, especially considering there was no valid search warrant involved.

when these are wildly dissimilar.   This harms Olivet by inaccurately bolstering Newsweek's false association of Olivet with criminal activity, and further driving a wedge between Olivet, its state regulators, and its stakeholders, injuring Olivet's trade and profession of educational services.

139.   The statement by Pragad, Cooper, and Candappa that "*Newsweek* has rejected Olivet accusations that it is reporting on its difficulties because of the dispute" is false and defamatory.   This represents defamation by omission. Newsweek failed to report on its "ownership" dispute, diverting readers from the dispute by attacking Olivet, while gaslighting its readers in justifying its attacks on Olivet through a statement that it had a higher ethical obligation to report on its "ownership."   This portrays Olivet in a harsh, criminal light and severely hindered Olivet's ability to engage in its trade and profession of Christian ministry and education.

140.   The statement by Pragad, Cooper, and Candappa that describes "IBT Media, Newsweek's former corporate parent" as a "Jang-controlled company" is false and defamatory.   Professor Jang is a retired teacher that has no connection to any of the allegations within Newsweek's coverage, nor does Newsweek even attempt to draw a connection.   IBT Media is not controlled by Jang.   The statement published by Pragad, Cooper, and Candappa is utterly false.   Further, the reckless name dropping of Jang by Pragad, Cooper, and Candappa defames the university by associating its founder with

criminal activity, seriously tarnishing the university's image and preventing it from engaging in its trade or business.

141.   The statement by Pragad, Cooper, and Candappa, buried near the bottom of the article, that "Bonta's complaint against Olivet made no mention of any criminal conduct" seriously undermines and disproves the title of the article and its entire thrust.  It also proves false the previous assertion by Pragad, Cooper, and Candappa that California regulators' assertions were in any way similar to the repeated defamations of Olivet by Pragad, Cooper, and Candappa, which have taken place as part of a brazen, years'-long attack campaign by Pragad, Cooper, and Candappa, that is ongoing to this day.

142.   The statement by Pragad, Cooper, and Candappa that a woman "escaped" Olivet is false and defamatory, and amounts to defamation *per se* because it falsely associates Olivet of a serious felony of human trafficking.  Video footage shows the campus is wide open, and there was no possibility that Olivet could prevent anyone from freely leaving Olivet's campus at any time, nor did Olivet ever do so.  Therefore, the statement that a woman "escaped" is false and defamatory.

143.   The following statements in the article are false and defamatory because they falsely associate Olivet with serious, criminal money laundering activity, of which Olivet has never taken a part:

- "Computers seized during the Anza raid, Newsweek reported, prompted Homeland Security investigators to ask cooperating witnesses for information on Mark Spisak, head of the World Olivet Assembly, the church founded by Jang which says it has followers in 160 countries."

- "The computers seized from Anza contained chat logs that pointed to the involvement of two people at Olivet in money laundering, one cooperating witness told Newsweek, citing information from a conversation with an HSI agent investigating the case. The witness, who declined to be identified for fear of retribution, shared a separate email sent by the investigator that gave the names of the two people of interest."

- "'They found some chatting record indicating that they are doing money laundry. And that's a crime. From the computers they seized during the OU raid,' the witness said in a message to Newsweek."

144. It is categorically false that Olivet engaged in money laundering. Pragad, Cooper, and Candappa are not entitled to rely on sources engaged in defamation against Olivet, especially when he knew or should have known the source's statements were false. Additionally, should Pragad, Cooper, and Candappa attempt to rely on this source for their defense, the source's identity is not protected from discovery. Pragad, Cooper, and Candappa must

be accountable for publishing the defamatory statements from their unreliable source—if such a source even exists, and the statements were not fabricated out of whole cloth.

145.    The statement by Pragad, Cooper, and Candappa that "[a]mong the complaints to California's education regulators was that Olivet had too much debt in relation to its assets…. [i]t is required to have a ratio of assets to debt of 1.25 to 1 under California's code of regulations, but has been found to have a ratio of 1.16 to 1" is false and defamatory.  First, this ratio was for a single year, another defamatory omission.  Second, this statement is also incorrect, because the regulator's measurement is a ratio of "current" assets to "current" liabilities, not simply a ratio of assets to debt.  This confirms the reckless inability by Pragad, Cooper, and Candappa to understand even the most basic information about the topic they attempted to cover.[7]  It also harms Olivet's

---

[7] There are two standards that the California educational regulator uses for financials: (1) For schools that receive federal funding (i.e., the vast majority of accredited schools, as most schools seek accreditation for the purpose of becoming eligible for federal funds), the regulator uses the US Department of Education's composite score to measure financial strength. The minimum score is 1.6 and Olivet has always been over 2.0.  (2) For schools that are not receiving federal funds, the regulator uses a single ratio of current assets to current liabilities to measure financial strength. OU was below the 1.25 in one single year.  In other words, if Olivet had decided to take federal funds that year, Olivet would have met the "higher" standard of the USDE composite score.  The current assets to current liability ratio does not give a full financial overview of an institution. For example, if one takes a loan and pays it over 10 years, then the entire loan amount (cash) becomes a current asset, but only the amount one has to pay in the first year (10% of the amount + a small amount of interest) becomes a current liability. Therefore, taking a loan boosts the ratio. On the other hand, if one builds a new dormitory for students, one would reduce the current assets (cash) as that cash would become a long-term asset (building), therefore reducing the ratio.

trade and business by portraying the institution as underfunded, when in reality, Olivet has undergone rapid growth over the past two decades, and continues its growth trajectory, even now.

146.   The language in the Defamatory Article's "READ MORE" box is false and defamatory.   The "READ MORE" box associates Olivet with "federal trafficking" and "money laundering," which are serious, false allegations.

147.   The statements by Pragad, Cooper, and Candappa at the conclusion of the article further undermine its credibility and highlight the reckless and defamatory nature of its statements at the outset of the article.   The Defamatory Article states: "Olivet remains operational in Missouri and Indiana. Educational authorities with both states told *Newsweek* any California action would not affect its standing due to 'religious exemptions.' *Newsweek* did not receive responses from authorities in Texas or Florida where the school also maintains campuses. When Olivet was shut down in New York state, these states said the school's ability to operate would not be affected due to religious exemptions."   These statements directly contradict the reckless and false statements by Pragad, Cooper, and Candappa at the top of the article.

148.   The correction by Pragad, Cooper, and Candappa is false and defamatory. The correction reads as follows, "**Correction 4/20/23, 4:24 p.m. ET.** *This story originally stated that Olivet pleaded guilty to money laundering; it pleaded guilty to*

*falsifying business records in connection with a money-laundering scheme.* Newsweek *regrets the error.*"  First, this correction was not issued in good faith. The damage to Olivet had already been done, and Pragad, Cooper, and Candappa continued with the attack campaign before and after the correction. Second, Olivet did not plead "guilty to falsifying business records in connection with a money-laundering scheme."  This is false and defamatory.

149.    Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "Olivet Assembly chief Mark Spisak under scrutiny in money laundering probe," on December 20, 2022.  The article was repeatedly republished dozens of times through a complex linkback scheme orchestrated by the defendants, including at least 10 times (but likely many more) in the last year.

150.    The article also included the defamatory *per se* statement that a "money laundering investigation into a small American Bible college [Olivet] has reached the top of a global Christian denomination."

151.    The article also included the defamatory *per se* statement that: "During that raid, Homeland Security Investigations seized computers containing electronic communications that pointed them to Spisak, according to a witness interviewed by federal agents."

152. The article also included the defamatory *per se* statement that: "investigators were placing Spisak and the organization he leads under ever closer scrutiny."

153. The article also included the defamatory *per se* statement that: "Jang fend off allegations that he was a heretic, after some of his followers said he had claimed to be a messianic figure known as the 'second coming Christ.'"

154. Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "Olivet University faces accreditor ultimatum as probes, violations pile up" on December 1, 2022.    The article was repeatedly republished dozens of times through a complex linkback scheme orchestrated by the defendants, including at least 10 times (but likely many more) in the last year.

155. The article also included the defamatory *per se* statement that Olivet was "now at the center of a federal trafficking and money laundering investigation."

156. The article also included the defamatory *per se* statement that: "According to one senior academic who worked at Olivet University, that is because the numbers are manipulated and bear no relationship to academic programs. The senior academic's description, documents reviewed by Newsweek and the accounts of several former students raise questions over the extent to which Olivet functions as a learning institution at all."

57

157.    The article also included the defamatory *per se* statement that: "Another former student was charged in a counterfeit goods plot in North Carolina and skipped bail, fleeing to China."

158.    The article also included the defamatory *per se* statement that: "The presence of such students bore almost no relationship to academic programs, the academic said."

159.    The article also included the defamatory *per se* statement that Olivet would "'fudge the numbers' to fit accreditation requirements, often creating overlapping or conflicting records."

160.    The article also included the defamatory *per se* statement that: "'They would backfill whatever courses he should have taken up to now. All those kinds of things are happening all the time, which is, of course, really fraudulent.'

161.    The article also included the defamatory *per se* statement that: "Electronic messages shared with Newsweek appeared to show that the academic complained that Olivet was responding to regulators in bad faith."

162.    The article also included the defamatory *per se* statement that: "Three showed Newsweek reporters the Olivet degrees for which they said they did not do the required course work."

163.    The article also included the defamatory *per se* statement that: "'The rest was all fake. All our grades. It was all made up.'"

164.   The article also included the defamatory *per se* statement that: "Again, student data were at the heart of the dispute and California authorities were worried enough about the gaps in the data to conduct an 'unannounced compliance inspection,' according to documents obtained from the California Bureau for Private Postsecondary Education (BPPE) by Newsweek under a Freedom of Information request."

165.   The article also included the defamatory *per se* statement that: "Olivet pleaded guilty to a felony."

166.   The article also included the defamatory *per se* statement that: "Olivet has been dogged by legal and financial trouble for much of its history."

167.   The article also included the defamatory *per se* statement that: "Olivet survived the 2020 felony conviction."

168.   The article also included the defamatory *per se* statement that: "a North Carolina trial linking a fugitive Olivet alumnus from China to a counterfeit goods trafficking plot, and Newsweek's reporting this year that showed the federal raid in California in April 2021 followed a 911 call from a female student who said she was being held captive on Olivet's campus."

169.   The article also included the defamatory *per se* statement that: "education authorities across the United States appear to have lost patience with Olivet."

170.   Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "Evangelical Christian Group Suspends Olivet as Newsweek

Lawsuits Pile Up" on August 10, 2022.  The article was repeatedly republished dozens of times through a complex linkback scheme orchestrated by the defendants, including at least 10 times (but likely many more) in the last year.

171.  The article also included the defamatory *per se* statement that "David Jang [Olivet University's founder]" was "a Korean-American cleric who leads a sect known as the World Olivet Assembly."

172.  The article also included the defamatory *per se* statement that: "accuses Johnathan Davis and other Jang disciples of destroying millions of pages of documents that it said would help the magazine recover millions of dollars in debt owed by IBT Media and other Jang-related entities."

173.  The article also included the defamatory *per se* statement that a "female Olivet student called 911 saying she was being held prisoner at the college."

174.  The article also included the defamatory *per se* statement that: "Meanwhile, in a North Carolina counterfeit goods case, a court set a $1 million bond and ordered the arrest of a Chinese pastor who is a follower of Jang and a graduate of Olivet University."

175.  Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "Olivet Student's Desperate 911 Call Led to Federal Trafficking Probe" on July 18, 2022.    The article was repeatedly republished dozens of times through a complex linkback scheme orchestrated by the defendants, including at least 10 times (but likely many more) in the last year.

176.    The article also included the defamatory *per se* statement that mentioned "a 911 call from a woman who said she was being held prisoner on its campus in Anza, California, in 2018."

177.    The article also included the defamatory *per se* statement that: "After the 911 call in March 2018, several international students at Olivet managed to leave the Anza campus."

178.    The article also included the defamatory *per se* statement that: "they were informed that they owed the college money and had to work to pay off their debt."

179.    The article also included the defamatory *per se* statement that Olivet committed "fraud."

180.    The article also included the defamatory *per se* statement that Olivet was at the "crux of the labor trafficking investigation."

181.    The article also included the defamatory *per se* statement that: "Suspicions of labor trafficking were one of the reasons why agents from Homeland Security Investigations, officers of the Riverside County police and the U.S. Labor Department searched the Anza campus in April 2021, law enforcement officials said. They said the agents were also investigating money laundering and visa fraud."

182.   The article also included the defamatory *per se* statement that: "The student who called 911 was an Indian woman who had been required to work in the kitchen and teach dance classes."

183.   The article also included the defamatory *per se* statement that: "the 911 caller's mother had called the school and asked why they were 'torturing' her daughter."

184.   The article also included the defamatory *per se* statement that a person "could not say how they made their way out of the isolated campus, which is surrounded by desert and lies 90 miles east of San Diego."

185.   The article also included the defamatory *per se* statement that: "the U.S. government is treating [individuals] as victims of trafficking."

186.   The article also included the defamatory *per se* statement that there was "a call for service from an unknown female indicating people living in her residence were not letting her leave."

187.   The article also included the defamatory *per se* statement that: "No one outside the newsroom has any influence on these stories."   This is demonstrably false and egregious given the malicious criminal allegations central to this complaint.

188.   The article also included the defamatory *per se* statement that: "This story is pursued by the newsroom as a matter of national security and public interest."

189.   The article also included the defamatory *per se* statement that: "Federal agents investigating Olivet are also looking into a case in North Carolina, law enforcement officials said. A judge in the state last month ordered the arrest of a Chinese pastor who ran an Olivet Assembly Church at which authorities seized counterfeit bracelets worth $24 million. The pastor, Rev. JianGang 'Frank' Lan, was arrested in 2019 and released on bail before his connection to Olivet was uncovered. Lan is a graduate of Olivet University, which recruits many students from China. Law enforcement officials told Newsweek they now suspect his was a case of so-called trade-based money laundering, a tactic employed by drug cartels to pay the Chinese manufacturers of chemicals used to make fentanyl. Lan remains in China."

190.   Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "Newsweek Sues David Jang, Leader of Sect Under Federal Investigation" on July 8, 2022.  The article was repeatedly republished dozens of times through a complex linkback scheme orchestrated by the defendants, including at least 10 times (but likely many more) in the last year.

191.   The article included the defamatory *per se* statement that: "*Newsweek* reported that agents of the Homeland Security Department had searched the premises of Olivet University in Anza, California, as part of an ongoing probe into money laundering, visa fraud and labor trafficking."

192.   The article also included the defamatory *per se* statement that: "Olivet University had previously been embroiled in a fraud and money laundering scandal that ended when the college, IBT Media, Etienne Uzac and other David Jang disciples pleaded guilty to felonies after being indicted by the Manhattan District Attorney in 2018."

193.   The article also included the defamatory *per se* statement that: "that same day, the New York education department shut down Olivet University's operations in the state, accusing Johnathan Davis' wife Tracy Davis and other senior managers of mismanagement and failure to clean up criminal activity after the 2018 fraud conviction."

194.   The article also included the defamatory *per se* statement that: "Three senior law enforcement officials told *Newsweek* on condition of anonymity that they suspected links from the Lan case to Chinese organized crime and drug cartels, which look to China to buy the precursor chemicals needed to make the powerful opioid fentanyl that has been behind a surge of deadly drug overdoses in the United States."

195.   The article also included the defamatory *per se* statement that: "The New York Education Department decided to shut down Olivet University's operations in the state on May 17, a few weeks after *Newsweek* reported on Homeland Security raid on Olivet's California campus, and at the end of a two-year review process."

64

196.   Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "IBT Media Sues Newsweek CEO, Demanding He Return the Magazine" on July 3, 2022.  The article was repeatedly republished dozens of times through a complex linkback scheme orchestrated by the defendants, including at least 10 times (but likely many more) in the last year.

197.   The article also included the defamatory *per se* statement that: "*Newsweek* reported that Olivet University was once again in legal trouble with federal agents searching its California campus in a new money laundering probe."

198.   The article also included the defamatory *per se* statement that: "The lawsuit promises to draw more attention to David Jang's Evangelical sect and its followers, already under growing pressure from authorities investigating whether they are involved in laundering money for criminals in the United States and China."

199.   The article also included the defamatory *per se* statement that: "While Jang's followers say their ministry is truly global, federal investigators are zeroing in on Olivet's links to China; the college brings many Chinese students to the United States."

200.   The article also included the defamatory *per se* statement that: "Three senior law enforcement officials told *Newsweek* on condition of anonymity that they suspected links from the Lan case to Chinese organized crime and drug cartels, which look to China to buy the precursor chemicals needed to make

the powerful opioid fentanyl that has been behind a surge of deadly drug overdoses in the United States."

201.   The article also included the defamatory *per se* statement that: "Investigators of the Department of Homeland Security searched Olivet's campus in Anza, California, in April 2021 as part of an investigation into money laundering, visa fraud and labor trafficking, *Newsweek* reported."

202.   The article also included the defamatory *per se* statement that: "The New York Education Department decided to shut down Olivet University's operations in the state on May 17, a few weeks after the *Newsweek* report and at the end of a two-year review process."

203.   Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "New York Shuts Down Olivet University Amid Federal Money-Laundering Probe" on July 2, 2022.   The article was repeatedly republished dozens of times through a complex linkback scheme orchestrated by the defendants, including at least 10 times (but likely many more) in the last year.

204.   The article also included the defamatory *per se* statement that: "New York shut down Olivet University's operations in the state, saying the Evangelical Christian college was still largely run by a group of David Jang disciples linked to a 2018 criminal conspiracy."

66

205.   The article also included the defamatory *per se* statement that: "His followers are now in the crosshairs of Department of Homeland Security investigators probing whether the university was part of a scheme to launder money for criminals in China and the United States."

206.   The article also included the defamatory *per se* statement that: "(Olivet's campuses in Tennessee and California are likely to also come under scrutiny, and DHS may revoke Olivet's authorization to enroll international students.)"

207.   The article also included the defamatory *per se* statement that Olivet was the target of "ongoing criminal investigation into visa fraud, labor trafficking and money laundering."

208.   The article also included the defamatory *per se* statement that: "Olivet pleaded guilty to its role in a money laundering scheme, as did several of Jang's followers and companies they ran."

209.   The article also included the defamatory *per se* statement that: "federal investigators are zeroing in on Olivet's links to China from where the college brings many students to the United States."

210.   The article also included the defamatory *per se* statement that: "Three senior law enforcement officials told *Newsweek* on condition of anonymity that they suspected links from the Lan's case to Chinese organized crime and drug cartels, which look to China to buy the precursor chemicals needed to make

the powerful opioid fentanyl that has been behind a surge of deadly drug overdoses in the U.S."

211.  Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "Chinese Pastor's Arrest Ordered as Feds Circle Olivet Christian Sect" on June 27, 2022.  The article was repeatedly republished dozens of times through a complex linkback scheme orchestrated by the defendants, including at least 10 times (but likely many more) in the last year.

212.  The article also included the defamatory *per se* statement that: "a church led by cleric David Jang was laundering money for criminals in the United States and China."

213.  The article also included the defamatory *per se* statement that there were "ongoing investigations into potential illegal activity by Jang's network of churches, businesses and education establishments, collectively known as Olivet."

214.  The article also included the defamatory *per se* statement that: "Jang's followers have been in legal trouble for nearly a decade."

215.  The article also included the defamatory *per se* statement that: "The North Carolina Secretary of State's office said it was unaware of Lan's connection to Olivet until Newsweek sought comment on the link in May."

216.  The article also included the defamatory *per se* statement that there was a "connection to Olivet or any suspicions of money laundering."

217.   The article also included the defamatory *per se* statement that falsely associated Olivet with "organized crime activities and other schemes like money laundering."

218.   The article also included the defamatory *per se* statement that associated Olivet with "federal crimes such as money laundering."

219.   The article also included the defamatory *per se* statement that falsely associated Olivet with "'trade-based money laundering' scheme connected to China."

220.   The article also included the defamatory *per se* statement that: "In such a trade-based money laundering transaction, a wealthy Chinese citizen looking to circumvent China's capital controls makes a deposit of the local yuan currency into a Chinese bank account controlled by a criminal network. The crime syndicate then deposits an equivalent amount in U.S. dollars in an American bank account controlled by the same Chinese national."

221.   The article also included the defamatory *per se* statement that: "Three senior law enforcement officials told *Newsweek* on condition of anonymity that they suspected links from the case to Chinese organized crime and drug cartels, which look to China to buy the precursor chemicals needed to make the powerful opioid fentanyl that has been behind a surge of deadly drug overdoses in the U.S."

222.  The article also included the defamatory *per se* statement that: "Derek Maltz, who headed the Drug Enforcement Agency's Special Operations Division for a decade before his retirement, said the case bore all the signs of being linked to money-laundering by the drug cartels after reviewing *Newsweek's* reporting and publicly available information."

223.  The article also included the defamatory *per se* statement that: "'When it comes to trade-based laundering involving Chinese nationals, in my experience, there is almost always a nexus between Chinese organized crime and drug cartels,' he said. "The cartels have expanded the utilization of Chinese organized crime and their complex trade-based schemes to get their narco proceeds out of the U.S., often using trade-based laundering."

224.  The article also included the defamatory *per se* statement that: "He was working in China as recently as April on Jang-related e-commerce businesses, according to two former Olivet members who are still in touch with members of the community."

225.  The article also included the defamatory *per se* statement that: "The two former members of Jang's sect told *Newsweek* that they recently discussed Frank Lan during interviews about Olivet with agents of the Department of Homeland Security."

226.  The article also included the defamatory *per se* statement that: "David Jang's network is no stranger to legal trouble."

227.    The article also included the defamatory *per se* statement that: "Several Jang associates and businesses pleaded guilty to fraud and money laundering in 2018."

228.    The article also included the defamatory *per se* statement that Olivet was the target of "an open investigation into visa fraud, labor trafficking and money laundering."

229.    The article also included the defamatory *per se* statement that: "All previous cases involving Jang followers related to crimes that had been committed in the United States."

230.    The article also included the defamatory *per se* statement that: "the case has put Jang's church under scrutiny. The World Olivet Assembly has been untouched by previous legal scandals and has publicly distanced itself from Olivet University since the fraud case there."

231.    Cooper, Jamali, and Pragad orchestrated, wrote, edited, and published an article titled "Christian University at the Center of Federal Trafficking and Fraud Probe" on April 22, 2022.   The article was repeatedly republished dozens of times through a complex linkback scheme orchestrated by the defendants, including at least 10 times (but likely many more) in the last year.

232.    The article also included the defamatory *per se* statement that Olivet was "fined in a money laundering case."

71

233.   The article also included the defamatory *per se* statement that falsely accused Olivet of "money laundering in addition to human and labor trafficking and visa fraud."

234.   The article also included the defamatory *per se* statement that: "A joint investigation by a local sheriff's office and HSI, given HSI's typical mandate, could suggest that such an investigation concerns matters beyond white collar financial crimes."

235.   The article also included the defamatory *per se* statement that Olivet was charged in a "money laundering scheme."

236.   The article also included the defamatory *per se* statement that Olivet students "spent most of their time in the United States working rather than studying and who were paid well below minimum wage."

237.   The article also included the defamatory *per se* statement that: "'The remoteness of the campus I think made it very impractical for people to leave,' the former DHS official said, recalling at least one person who managed 'to escape.'"

238.   The article also included the defamatory *per se* statement that: "Pragad was working to protect the company from interference from members of Jang's sect."

239.   The statements made by Pragad, Cooper, Cunningham, and Jamali identified—and were "of or concerning"—Olivet, repeatedly referring to

Olivet explicitly by name or implicitly by association with various other entities and individuals.

240.    The statements made by Pragad, Cooper, Cunningham, and Jamali contain falsehoods about Olivet, whether on their face, and/or by virtue of clear implication that Defendant affirmatively intended, or by malicious, intentional, or reckless omission.

241.    The false statements by Pragad, Cooper, Cunningham, and Jamali regarding Olivet were defamatory *per se* because they falsely associated Olivet directly and indirectly with criminal activity.

242.    The false statements by Pragad, Cooper, Cunningham, and Jamali regarding Olivet were defamatory *per se* because they "[tend] to injure one in… trade or profession" as they associate Olivet, an evangelical Christian institution, with egregious unethical conduct and beliefs that are irreconcilable and incompatible with the proper exercise of its mission to "[equip] [Biblical scholars and leaders] with the practical skills to preach the Gospel effectively… [and prime] them to revolutionize the world through Christian mission."[8]  To the extent any of the statements by Pragad, Cooper, Cunningham, and Jamali were not defamatory *per se*, Olivet alleges they were defamatory under the standard elements of a New York defamation claim.

---

[8] *Mission*, OLIVET UNIVERSITY,
https://www.olivetuniversity.edu/aboutolivet/mission.html (last visited Feb. 21, 2025).

243.   The false and defamatory statements by Pragad, Cooper, Cunningham, and Jamali were published throughout the State of New York and around the world on the Internet, and were widely circulated by Newsweek to disseminate the statements to its broad audience, including on its homepage as the global top news story; by email blast to its subscribers; and throughout its website sections, pages, and topic pages.

244.   Pragad, Cooper, Cunningham, and Jamali made the false and defamatory statements knowing that they were false or with reckless disregard for their truth or falsity because of publicly available information that a reasonable writer, editor, or publisher would be expected to find.

245.   Pragad, Cooper, Cunningham, and Jamali made the false statements with ill will and spite, and with wanton, reckless, or willful disregard for its injurious effect on Olivet and Olivet's rights after the Newsweek Publisher Pragad declared he would drop on Olivet a "nuclear bomb."

246.   Pragad, Cooper, Cunningham, and Jamali consciously repeated and republished every article in the entire attack article series each time they published a new article, creating an extremely complex backlink web.  This republication was orchestrated to additionally systematically attack Olivet's SEO results and thereby defame any of Olivet's students and stakeholders that wanted to know more about Olivet.  Each and every article in the series

was republished multiple times whenever a new article was released, and this republication occurred repeatedly, at least 10 times, within the last 365 days.

247.   Each one of the defendants subjected Olivet to a continual, cumulative patter of tortious conduct through the continuous barrage of defamatory articles accusing OU of all kinds of egregious, felonious, criminal, and unbiblical behavior that were published over the course of multiple years—unabated, to this day.  While there is no indication each defendant's wrongful action has yet to have ceased, the last harmful act engaged in by the defendants was the publication of the October 2, 2025 article, "Civil Suit Against Olivet to Proceed After Feds Decide Against Charges."

248.   The false and defamatory statements by Pragad, Cooper, Cunningham, and Jamali caused Olivet to suffer reputational, financial, and professional harm.

249.   To quantify the harm that Olivet suffered and continues to suffer from the Defamatory Articles and Newsweek's ongoing attack campaign, it is helpful to look at the influence of an ad campaign on Newsweek. Pragad has publicly stated that Newsweek advertising packages regularly generate ad revenues in the tens of millions of dollars.  Olivet has been damaged by Newsweek's influence in an amount far greater than an advertising campaign would cost because not only has Newsweek published 23 articles by Pragad, Cooper, Cunningham, and Jamali in its campaign against Olivet, but also it repeatedly

boosted its Olivet articles to its top global news positions via website and email blast.   Therefore, Olivet seeks damages in an amount no less than $100,000,000.

250.   Olivet seeks punitive damages for the malicious Defamatory Article in an amount that would discourage Pragad, Cooper, Cunningham, and Jamali from engaging in such behavior in the future.  Olivet seeks punitive damages in an amount no less than $100,000,000.

251.   Olivet demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Olivet prays this Court enter orders as follows:

1. Finding that Pragad, Cooper, Cunningham, and Jamali are liable for defaming Olivet.

2. Awarding permanent injunctive relief that Pragad, Cooper, Cunningham, and Jamali shall refrain from repeating or in any way furthering the publication of the defamatory statements and will permanently delete all defamatory articles.

3. Awarding Olivet damages in an amount to be determined at trial in an amount no less than $100,000,000.

4. Awarding Olivet pre- and post-judgment interest, costs, and such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Olivet hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: December 18, 2025                    Respectfully submitted,


                                        By: */s/ Yen-Yi Anderson*
                                            Yen-Yi Anderson
                                            New York Bar No. 5096268
                                            Anderson and Associates
                                            347 W 36th Street, Suite 1003
                                            New York, NY 10018
                                            Tel: (646) 201-9117
                                            Email: y.anderson@aalawpc.com

                                            Counsel for Plaintiff
                                            Olivet University